AO 91 (Rev. 11/11) Criminal Complaint | AUSA Rachel Gurley (312) 353-5370

FILED
5/10/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

TOMMY SEWARD

CASE NUMBER: 26CR219

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about May 8, 2026, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 2113(b) | with intent to steal, attempted to take and carry away, money exceeding $1,000.00 belonging to, and in the care, custody, and control of Citibank, 8650 S. Stony Island Avenue, Chicago, Illinois, 60619, the deposits of which were then insured by the Federal Deposit Insurance Corporation |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

James Brown
JAMES BROWN
Task Force Officer
Federal Bureau of Investigations (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date:   May 10, 2026

*Judge's signature*

City and state: Chicago, Illinois

M. DAVID WEISMAN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, JAMES BROWN, being duly sworn, state as follows:

1.    I am a Detective with the Chicago Police Department (CPD) and have been so employed for over 13 years.  I am currently assigned to the Federal Bureau of Investigations' Violent Crimes Task Force as a Task Force Officer. My current responsibilities include the investigation of violent crimes, including, among others, kidnapping, bank robbery, violations of the Hobbs Act, and the apprehension of violent fugitives.

2.    This affidavit is submitted in support of a criminal complaint alleging that TOMMY SEWARD has committed attempted bank theft in violation of Title 18, United States Code, Section 2113(b). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SEWARD with attempted bank theft, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.    This affidavit is based on my personal knowledge, review of body camera footage from responding officers, information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts,

1

and my training and experience and the training and experience of other law enforcement officers with whom I have consulted.

## I.     FACTS SUPPORTING PROBABLE CAUSE

4.     In summary, and as set forth in more detail below, on May 8, 2026, at approximately 1:02 p.m., SEWARD attempted to steal $5,000.00 from a Citibank branch, located at 8650 S. Stony Island Avenue in Chicago, Illinois. When law enforcement responded to the attempted robbery minutes after it occurred, CPD officers observed a male who matched the suspect's description walking out of the bank. The suspect was arrested on scene, admitted he "did it," and self-identified as Tommy Seward, which was confirmed by his driver's license on his person when he was arrested.

### a.  Attempted Bank Theft on May 8, 2026

5.     According to Citibank surveillance footage, on May 8, 2026, at approximately 11:23 a.m., a black male wearing black pants, a black hoodie with "DeWalt" written across the front in yellow lettering, and a gray, brown, or black baseball hat ("the suspect") entered a Citibank located at 8650 S. Stony Island Avenue, Chicago, Illinois. A still image of the suspect entering the Citibank, captured from Citibank's surveillance footage, is included below.



6.      According to law enforcement interviews of a Citibank personal banker ("Personal Banker 1"), the suspect, a client of Citibank, met with Personal Banker 1, during which Personal Banker 1 provided him with information on overdrafting and borrowing money from his social security benefits, and offered him an application for a personal loan, which he declined.

7.      During his/her interview with law enforcement, Personal Banker 1 stated that the suspect asked Personal Banker 1 about disputes he had previously filed with Citibank.

8.      According to Personal Banker 1, he/she directed the suspect to an empty desk next to his/hers to contact, using a Citibank phone, a Citibank department regarding disputes the suspect had previously filed with the bank.

9.      According to another personal banker ("Personal Banker 2") who was interviewed by law enforcement, Personal Banker 2 overheard the suspect begging someone for money over the phone.

10.      Based on law enforcement interviews with Personal Banker 1 and 2, the suspect was on the phone for roughly one hour.

11.      During his/her interview with law enforcement, Personal Banker 1 informed law enforcement that while the suspect was on the phone at the desk next to Personal Banker 1's, he/she served another Citibank client.

12.      Personal Banker 1 said that once the suspect was finished on the phone, he sat down in the lobby of the bank.

13. According to Personal Banker 1, when he/she finished with the other client, he/she checked to see whether the suspect had any other accounts at his request and, when he/she found none, informed the suspect of the same.

14. According to Personal Banker 1, the suspect's only Citibank account was a joint account with his wife containing three dollars.

15. According to law enforcement interviews, the suspect then got into line at teller station number three.

16. According to law enforcement's interview with the teller at teller station number three ("Teller 1"), at approximately 1:02 p.m., the suspect approached teller station number three and inserted his Citibank card into the machine on the counter.

17. As relayed by Teller 1 during Teller 1's interview with law enforcement, the suspect said he wanted to withdraw $5,000.00, to which Teller 1 responded to the suspect that he did not have $5,000.00 in his account.

18. According to Teller 1's interview with law enforcement, upon the suspect inserting his card into Citibank's machine, his account information was visible on the Citibank system.

19. A still image of the suspect at Teller 1's station at 1:03 p.m., captured from Citibank's surveillance footage, is shown below.



4

20. Based on law enforcement's interview with Teller 1, the suspect then asked Teller 1 what would happen if he told Teller 1 to dispense $5,000.00 and said, "don't make no signal."

21. According to Teller 1's interview with law enforcement, Teller 1 believed the suspect was trying to rob the bank, and he/she felt afraid and threatened by the suspect's words.

22. According to Teller 1 and based on evidence collected following the incident at Citibank, Teller 1 sent a message to his/her co-workers via the "Chatham Citibank" group chat in Microsoft Teams stating, "Customer [trying to] rob."

23. A screenshot of the Microsoft Teams group chat showing Teller 1's message is shown below.



24. Teller 1 reported to law enforcement that the suspect stood at teller station number three, and Teller 1 told him that the money was coming.

25. According to Teller 1, the suspect asked what was taking so long, to which Teller 1 responded that the money had to come out of a machine.

26. According to her interview with law enforcement, Teller 1 did not dispense any money, but the suspect stood and waited.

5

27.     According to Teller 1, she left teller station number three and went into a back room of the bank. Teller 1 relayed that Personal Banker 1 went to the back room as well. Teller 1 told law enforcement that he/she felt scared and threatened during the incident.

28.     According to Teller 1's interview with law enforcement, when she was in the back room, Personal Banker 1 called 911 and pushed the panic button in the back room, which Personal Banker 1 and Teller 1 later learned had disconnected.

29.     According to law enforcement's interview with Teller 1, after Teller 1 went to the back room, the suspect then went to a second teller's window ("Teller 2") and waited.

30.     Based on law enforcement's interview of Teller 2, the suspect told Teller 2 to "give [him] the cash in [Teller 2's] hand."

31.     Teller 2 informed law enforcement that he/she was helping another Citibank customer at that time, and the customer responded, "no, this is my money."

32.     Around this same time, Personal Banker 2 also had a conversation with the subject, in which he asked for $5,000.00.

33.     According to Citibank employees and records, no money was taken from Citibank by the suspect.

34.     According to Citibank's FDIC certificate, the Federal Deposit Insurance Corporation (FDIC) insured Citibank's deposits at the time of the attempted bank theft.

### b. Arrest of Suspect on Scene

35.     According to law enforcement officers who were dispatched to the scene, the suspect was described in the 911 call made by the Citibank employee as a short black male wearing glasses, a brown cap, a black hoodie, and black pants.

36.     According to law enforcement officers and body worn camera footage from the responding officers, CPD officers arrived at Citibank at approximately 1:08 p.m. Upon entering the bank, responding officers observed a man matching the suspect's description walking towards the door they were entering.

37.     According to law enforcement officers and body worn camera footage, upon entering the bank, a responding CPD officer asked Citibank employees who the 911 call was about. A Citibank employee pointed at the suspect, who was walking towards the bank's front entrance.

38.     Based on my review of the body worn camera footage, the suspect said to the responding officers, "Yeah, come on outside."

39.     According to body worn camera footage, a responding officer again attempted to determine who the 911 call had been about, and an unidentified voice can be heard stating, "It was him."

40.     Based on my review of body worn camera footage, the suspect exited the first of two sets of double doors at the bank's front entrance, and, at that time, a responding officer detained the suspect and placed him in handcuffs.

41. According to body worn camera footage, after being handcuffed, the suspect stated, "I did it," "I just asked him for some money," "I want to go to jail, take me," "please take me," and "please put me in the car."

### c. Identification of Suspect as Tommy Seward

42. According to Teller 1, the suspect's Citibank card identified him as Tommy V. Seward.

43. Based on my review of video footage of the suspect's *Mirandized*, custodial interview, the suspect identified himself as Tommy Seward.

44. Based on a search of law enforcement databases, law enforcement obtained a photograph of Tommy Seward (DOB **/**/1967), compared it to the suspect, and positively identified the suspect as Tommy Seward.

45. After receiving his *Miranda* warnings, Seward admitted in his post-arrest custodial interview that he did something "wrong."

## CONCLUSION

46. Based on the above information, I respectfully submit that there is probable cause to believe that on or about May 8, 2026, at Chicago, in the Northern District of Illinois, Eastern Division, Tommy Seward, with the intent to steal, attempted to take and carry away, money exceeding $1,000.00, belonging to and in the care, custody, and control of Citibank, 8650 S. Stony Island Avenue, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation in violation of Tile 18, United States Code, Section 2113(b).

FURTHER AFFIANT SAYETH NOT.

James Brown
JAMES BROWN
Task Force Officer
Federal Bureau of Investigations (FBI)

SUBSCRIBED AND SWORN to before me
telephonically on May 10, 2026

9